IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00171-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL SCOTT LESLIE,

    Defendant.

## INFORMATION

The United States Attorney charges that:

### Count One

18 U.S.C. § 1344

1. Between approximately October 2015 and October 2017, in the State and District of Colorado and elsewhere, the defendant, MICHAEL SCOTT LESLIE, did knowingly execute and attempt to execute a scheme to defraud a financial institution, namely C.S.B. ("the Victim Bank") (hereinafter referred to as "the scheme").

*The Scheme*

2. The defendant desired to obtain funds for himself and businesses in which he held a financial interest.

3. **The Relevant Parties.** The defendant is the owner of Montage Mortgage LLC ("Montage") which is in the business of originating loans, some of which were insured by

1

the Federal Housing Authority ("FHA"). Montage is registered in both Colorado and North Carolina. In 2015, the defendant filed articles of incorporation for Mortgage Capital Management LLC ("MCM") to register MCM in Colorado; MCM has offices in both Virginia and Colorado. MCM purports to be in the business of investing in real estate mortgages. Also in 2015, the defendant filed articles of incorporation and registered Snowberry Settlements LLC ("Snowberry") in Colorado. Snowberry engages in "lender file reviews" for loan origination, and was represented to the Victim Bank to be a legitimate third-party title company licensed to conduct real estate closing transactions.

4.     **The Temporary Mortgage Participation Program.**  On or about February 20, 2014, the defendant, through Montage, executed a Temporary Mortgage Participation Program ("TMPP") agreement with the Victim Bank. Pursuant to the TMPP, the Victim Bank could opt to invest 99% in loans originated by Montage, with Montage retaining the remaining 1% interest. Each loan in the TMPP was meant to be sold to a final investor, typically for a price higher than the sum of the 99% of the loan value as held by the Victim Bank and the 1% retained by Montage. At the defendant's direction, a representative from Montage uploaded documents to a web platform to which the Victim Bank and Montage both had access; these documents included items such as a borrower's loan application, credit history reports, and income history ("the collateral package"). Montage simultaneously also provided the Victim Bank with wire instructions should the Victim Bank desire to invest in that particular loan, as well as the name of the applicable closing agent and title company chosen by Montage. If the Victim Bank opted to invest in that particular loan, it then wired funds to the closing agent and title company selected

by Montage, and a closing was scheduled and executed. The loans in which the Victim Bank invested accrued interest for the bank while Montage identified a final investor for the loan. Once that final investor was secured, that investor sent a Purchase Advice to Montage who then forwarded the Purchase Advice to the Victim Bank. In response, the Victim Bank mailed the deed associated with that particular loan to the chosen investor who subsequently wired funds for that loan to the Victim Bank.

5. **It was part of the scheme that:**

   a. Between October 2015 and October 2017, the defendant caused the Victim Bank to invest in 144 fraudulent loans represented by him to be legitimate loan products and valued at approximately $32 million. These 144 loans were purportedly originated by Montage, "closed" and settled by Snowberry, which earned fees for these tasks, and then purportedly sold to MCM, which the defendant represented to be a final investor. These 144 loans were not in fact real loans.

   b. The defendant caused the Victim Bank to be paid by MCM with the Victim Bank's own money from its investment in prior fraudulent loans. That is, money from the Victim Bank's investment in prior fraudulent loans funded the payment from the purported final investor back to the Victim Bank. This cycle of payment continued until the defendant's fraud was detected.

   c. The defendant did not disclose to the Victim Bank that he held a financial interest in MCM and Snowberry and that any real estate transactions involving MCM and Snowberry were not in fact arms-length transactions.

d.  The defendant used the personal identifying information ("PII") of 183 real individuals for these 144 fraudulent loans. The defendant had access to the PII for these 183 individuals because these individuals had either i) used Montage for prior legitimate residential real estate transactions which were properly executed and closed, or ii) been solicited by Montage to refinance the individuals' existing residential loans, which allowed Montage and the defendant to request and receive these borrowers' credit scores and reports. After borrowers sent Montage their PII for the purported refinance, Montage would advise them that they did not qualify for a refinance. The borrowers listed on the 144 fraudulent loans were unaware until contacted by law enforcement that their personal identifying information had been used by the defendant and Montage as part of the scheme described herein.

e.  The defendant created fraudulent collateral packages for these 144 fraudulent loans in a variety of ways to include the following: doctoring credit reports to change the borrower's credit score, falsifying loan documents, forging signatures on falsified loan documents, fabricating closing protection letters from a real title insurance company, and using borrowers' real social security numbers.

f.  After he created or caused to be created falsified and forged collateral packages for these 144 fraudulent loans, the defendant submitted them or caused them to be submitted alongside other legitimate loan packages to the Victim Bank. To further evade detection, the defendant instructed the Victim Bank to wire its 99% investment in a particular loan to his company Snowberry, as the closing agent for 144 sham closings. Snowberry knew these were sham closings

because they never asked a borrower to appear for closing nor did Snowberry send a representative to closing. Nevertheless, based on the defendant's instructions, the Victim Bank wired its 99% investment to Snowberry and waited for Montage to identify a final investor for the loan.

g.   Because the 144 loans were not in fact real loans, they could not be sold to a legitimate arms-length investor. For each of the 144 fraudulent loans, the defendant informed the Victim Bank that he had secured MCM as a final investor. Based on that information, the Victim Bank sent the Note for each fraudulent loan to MCM. The defendant then caused MCM to wire funds to the Victim Bank to purportedly "purchase" the fraudulent loan. This created the appearance that MCM was a real investor, when in fact MCM was merely using funds the Victim Bank had previously sent to MCM for other fraudulent loans.

h.   This cycle of the Victim Bank's investment monies being used to fund MCM's purchase of the fraudulent loans continued until the defendant's fraud was detected in October 2017. When the defendant's fraud was detected, the Victim Bank ceased purchasing additional loans from the defendant and Montage. At the time the defendant's fraud was detected, the Victim Bank had invested in and had been paid by MCM with its own money for 132 fraudulent loans. There were 12 fraudulent loans valued at approximately $3.9 million still on the Victim Bank's balance sheet when the fraud was detected for which the Victim Bank never received payment by the defendant or any of his affiliated corporate entities.

6.   On or about September 7, 2017, in the State and District of Colorado and

5

elsewhere, the defendant, MICHAEL SCOTT LESLIE, did knowingly execute or attempt to execute the scheme by causing the Victim Bank to transmit $282,751.10 as an investment in a fraudulent loan for borrowers M.S. and J.S.

All in violation of Title 18, United States Code, Section 1344.

## Count Two

### 18 U.S.C. § 1028A

On or about September 7, 2017, in the State and District of Colorado and elsewhere, the defendant, MICHAEL SCOTT LESLIE, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit, the name, date of birth, and social security number of a person with the initials M.S., during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, bank fraud, in violation of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

### Forfeiture Allegation

1.  The allegations contained in Count One of this Information is hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853.

2.  Upon conviction of the violation alleged in Count One of this Information, involving a violation of Title 18, United States Code, Section 1344, defendant MICHAEL SCOTT LESLIE shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any and all of the defendants' right, title and interest in all property

constituting and derived from any proceeds the defendant obtained directly and indirectly as a result of such offense, including, but not limited to:   A money judgment in the amount of proceeds obtained by the defendant.

3. If any of the property described above, as a result of any act or omission of the defendant:

   a) cannot be located upon the exercise of due diligence;
   b) has been transferred or sold to, or deposited with, a third party;
   c) has been placed beyond the jurisdiction of the Court;
   d) has been substantially diminished in value; or
   e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

Respectfully submitted this _____ day of February, 2020.

JASON R. DUNN
United States Attorney

*s/ Hetal J. Doshi*
HETAL J. DOSHI
Assistant U.S. Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Hetal.Doshi@usdoj.gov